UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANN MARIE ROSE BAKER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-08-1908 |
| | § | |
| UNIVERSITY OF TEXAS HEALTH | § | |
| SCIENCE CENTER HOUSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction**

Pending before the Court is the defendants', University of Texas Health Science Center at Houston ("UTHSCH") and the University of Texas System Medical Foundation ("UTSMF"), motion for summary judgment (Docket Entry No. 50).  The plaintiff, Ann Marie Rose Baker, M.D., filed a response (Docket Entry No. 61), to which the defendants filed a reply (Docket Entry No. 68).  After having carefully reviewed the motion, the responses, the record and the applicable law, the Court grants the defendants' motion.

**II.    Factual Background**

This case concerns the plaintiff's disability discrimination allegations arising during her time in the defendants' Pediatrics Residency Program (the "Program").  After graduating from medical school, the plaintiff began as a pediatrics resident for the defendants in September 2003. In May 2004, she contracted viral meningitis and was then diagnosed with Guillain-Barre Syndrome ("GBS") in June 2004.[1]  After being diagnosed with GBS, the plaintiff took multiple medical leaves of absence.  Upon her return to the Program, the plaintiff continued her residency

---

[1] GBS is a disorder in which the body's immune system attacks parts of the peripheral nervous system, resulting in muscle weakness and potential paralysis.  Fatigue is a possible symptom for those with GBS.

with certain work restrictions and limitations, including, *inter alia*, no standing or walking for more than ten continuous minutes, use of a wheelchair, and fifteen-minute rest and food breaks every two hours.

Multiple of the plaintiff's supervising physicians gave her poor performance reviews for her rotations. The Pediatric Education Committee determined that the plaintiff must complete a remediation plan to complete the Program in order to ensure that she was qualified to practice pediatrics completely and independently. On May 24, 2007, Dr. Sharon Crandell, the Program Director, sent the plaintiff this remediation plan reflecting an additional three months of training. Dr. Crandell reminded the plaintiff of her right to appeal the committee's decision under the terms of the Graduate Medical Education Resident Handbook, but she chose not to exercise that right.

On September 30, 2007, the plaintiff received her certificate of completion of the Program. Shortly thereafter, she filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been subject to derogatory comments and harassment, and that she had endured extended rotation times and adverse treatment because of her medical condition. On February 29, 2008, the EEOC notified the plaintiff that it was closing its file on her charge and was unable to conclude that the defendants had violated any statute. On June 16, 2008, the plaintiff filed this suit.

### III. Contentions of the Parties

#### A. The Defendants' Contentions

The defendants contend that the plaintiff's ADA Title II claim is barred by the doctrine of state sovereign immunity. They aver that the plaintiff cannot establish a *prima facie* case of disability discrimination, and that the plaintiff cannot recover damages in the absence of

intentional discrimination or proximate causation. The defendants also move to strike the plaintiff's response in its entirety.[2]

### B. The Plaintiff's Contentions

The plaintiff contends that genuine issues of material fact exist to preclude summary judgment. She maintains that the defendants were her joint employers, and that they receive federal funds. She has asserted claims for disability discrimination under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165,[3] and the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794.

## IV. Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure

---

[2] In light of the fact that the Court is granting the defendants' motion for summary judgment, the Court denies the defendants' motion to strike. However, the Court admonishes the plaintiff's counsel that the Court will not tolerate such procedural violations in future cases.

[3] The version of the ADA that applies to this dispute is the version that existed prior to the ADA Amendments Act of 2008 ("ADAA"), which became effective on January 1, 2009. The ADAA does not apply retroactively to conduct prior to that date. *See EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009) ("Congress recently enacted the [ADAA] . . . , but these changes do not apply retroactively." (internal citation omitted)); *Cooper v. United Parcel Service, Inc.*, 368 Fed. Appx. 469, 475 n.5 (5th Cir. 2010) (applying pre-amendment ADA to claims based on discharge in 2008). Because this case involves conduct prior to January 1, 2009, the ADAA does not apply.

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but

only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.     Analysis and Discussion

The Court grants the defendants' motion for summary judgment because no genuine issues of material fact remain in dispute. The central factual issue concerns why the defendants extended the plaintiff's residency for a few months.[4] However, while this is a factual issue, it is not material. Not only are the defendants protected by state sovereign immunity, but as medical educators they are entitled to a degree of discretion when determining their student's level of medical ability and knowledge – particularly when patient safety is at stake. The plaintiff seeks to curb that discretion to an impermissible degree, and the Court will not usurp the educator's role.

---

[4] Secondarily, the plaintiff also alleges that certain supervisors of her residency program made derogatory insinuations or comments about her disability. The Court determines that none of these allegations are legally actionable. Not only are those allegations peripheral to the central issue of how this alleged discrimination affected her completion of the Program, but certain of those allegations are based on hearsay and/or the supposed comments of fellow students and non-supervisors. These allegations do not present genuine issues of material fact. *See also*, Section **V(C)**, *infra*.

### A. State Sovereign Immunity

The Court determines that the plaintiff's claims are barred by the doctrine of state sovereign immunity.[5] Sovereign immunity, imposed upon federal courts by the Eleventh Amendment, is a jurisdictional issue that must be addressed before any determination of the claims on the merits. *See Alden v. Maine*, 527 U.S. 706, 730 (1999); *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 285-86 (5th Cir. 1999). Congress may abrogate state sovereign immunity only where it "act[s] pursuant to a valid grant of constitutional authority." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)).

Under the ADA, it is sometimes true that "[a] State shall not be immune" from suit. 42 U.S.C. § 12202.[6] That is because Congress may abrogate state sovereign immunity with respect to Title II "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006). The Supreme Court examines three elements "on a claim-by-claim basis" to determine whether Congress has appropriately abrogated a state's immunity for a Title II claim:

> (1) which aspects of the State's alleged conduct violated Title II;
> (2) to what extent such misconduct also violated the Fourteenth Amendment; and
> (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

---

[5] The defendants are both afforded the protections of sovereign immunity. *See United States v. Texas Tech. Univ.*, 171 F.3d 279, 289 n.14 (5th Cir. 1999) ("The Eleventh Amendment cloaks Texas Tech University and Texas Tech University Health Sciences Center with sovereign immunity as state institutions." (internal citations omitted)); TEX. EDUC. CODE § 65.02(a)(9)(A) (UTHSCH established as part of The University of Texas System); UNIV. OF TEX SYSTEM, RULES AND REGULATIONS OF THE BOARD OF REGENTS, Rule 60304 (establishing UTSMF as an internal nonprofit corporation managed pursuant to the charter and bylaws of the Board of Regents).

[6] The Court will consider the plaintiff's ADA claims and her RA claims together, because the two statutes provide parallel remedies. *See Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000); 42 U.S.C. § 12133. "The language in the ADA generally tracks the language set forth in the RA. In fact, the ADA expressly provides that 'the remedies, procedures and rights' available under the RA are also accessible under the ADA." *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133 (1995)).

*Georgia*, 546 U.S. at 159.

Applying these three elements, the Court determines that the defendants are entitled to state sovereign immunity. As regards the first *Georgia* element, the contested conduct is the defendants' imposition of the remediation plan, and the resulting delay in the plaintiff's completion of the Program. *See Georgia*, 546 U.S. at 159. As regards the second *Georgia* element, the plaintiff has not alleged a violation of the Fourteenth Amendment. *See id.*

As regards the third *Georgia* element, Congress' purported abrogation of state sovereign immunity is invalid as to the plaintiff's discrimination claims. *See id*. The Fifth Circuit has determined both that "disability discrimination is subject only to rational-basis review," and that Title II's requirement that states provide disabled individuals access to state programs "limits state activity far more than does rational-basis review." *Hale v. King*, 624 F.3d 178, 184-85 (5th Cir. 2010).[7] Addressing this tension, the Fifth Circuit concluded that "there is no constitutional violation so long as 'there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Hale*, 624 F.3d at 184 (citing *Garrett*, 531 U.S. at 367).

The defendants have presented a legitimate governmental purpose for requiring the plaintiff's remediation plan. A state university may rationally deny a disabled student equal access to certain programs (such as medical residency programs in which patient safety is paramount), "even where its reasons fall short of avoiding an 'undue burden' or preventing fundamental alterations to a program." *Hale* at 185. Furthermore, courts are not well-positioned to second-guess the rationality of a state's administration of academic institutions. *See Fisher v. Univ. of Tex. at Austin*, 631 F.3d 213, 310 (5th Cir. 2011) (recognizing university's academic

---

[7] *See also*, *Bd. of Trustees of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational.").

decisions "are a product of 'complex educational judgments in an area that lies primarily within the expertise of the university,' far outside the experience of the courts." (citing *Grutter v. Bollinger*, 539 U.S. 306, 328-29 (2003))).

Indeed, the Supreme Court has warned against "further enlarg[ing] the judicial presence in the academic community and thereby risk[ing] deterioration of many beneficial aspects of the faculty-student relationship." *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978). Moreover "[t]he state need not justify its own actions; rather, 'the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Hale*, 624 F.3d at 184 (citing *Garrett*, 531 U.S. at 367). The plaintiff has not met this burden. Therefore, the Court determines that the defendants are protected by state sovereign immunity, and it grants the defendants' motion for summary judgment.

      **B.**    ***Prima Facie* Case of Disability Discrimination**

In the alternative, even assuming that sovereign immunity did not bar the plaintiff's claims, the plaintiff still cannot establish a *prima facie* case of disability discrimination. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To make a *prima facie* case under Title II [of the ADA] a plaintiff must show: (1) that [she] has a qualifying disability; (2) that [she] is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of [her] disability." *Frame v. City of*

*Arlington*, 616 F.3d 476, 482 (5th Cir. 2010) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2000)).

Additionally, the mere violation of the ADA alone does not establish injury. Rather, the plaintiff is obligated to show, by competent evidence, that the defendants' violation of the ADA proximately caused her actual injury before she can recover. *See Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 562 (5th Cir. 1998) (holding "that damages liability [under the ADA] must be based on something more than a mere violation of that provision. There must be some cognizable injury in fact of which the violation is a legal and proximate cause for damages to arise from a single violation.").

The plaintiff alleges that the remediation plan following her poor evaluations and her resulting delay in completing the Program constituted disability discrimination. However, the plaintiff has failed to establish the second and third elements of her *prima facie* case. As to the second element, the plaintiff has not offered sufficient evidence that she was "being denied the benefits of services, programs, or activities for which the public entity is responsible." *See Frame*, 616 F.3d at 482 (citing *Melton*, 391 F.3d at 671-72). To establish a Title II violation, a plaintiff must show a denial of "meaningful access." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). An academic institution's obligation to accommodate disabled students does not require the institution to make fundamental or substantial changes to its programs or standards. *Alexander*, 469 U.S. at 301-02 (discussing *Se. Comm. College v. Davis*, 442 U.S. 397 (1979)). Nor is a school required to perfectly adhere to an individual's wishes in establishing or executing an accommodation plan. *See* 34 C.F.R. §§ 104.34-37. Rather, a university may make "changes in the length of time permitted for the completion of degree requirements, substitution of specific courses required for the completion of degree requirements, and adaptation of the manner in

which specific courses are conducted" in order to apply its academic requirements in a non-discriminatory manner. 34 C.F.R. § 104.44.[8]

The parties do not dispute that, after being diagnosed with GBS, the plaintiff continued in the Program and eventually completed her pediatrics residency. Although the plaintiff was required to complete a remediation plan, she was not excluded from or denied "meaningful access" to the Program. *See Alexander*, 469 U.S. at 301. Rather, by requiring completion of the remediation plan, the defendants were merely exercising their legally permissible discretion to ensure that the plaintiff met the Program's requirements. *See Fisher*, 631 F.3d at 230 (citing *Grutter*, 539 U.S. at 328-29).

As to the third element of the plaintiff's *prima facie* case of disability discrimination, she has not offered sufficient evidence that this alleged discrimination occurred "by reason of [her] disability." *Frame*, 616 F.3d at 482 (citing *Melton,* 391 F.3d at 671-72). It was not until multiple faculty members stated that the plaintiff's performance was so deficient that she compromised patient safety that she was required to complete the remediation plan. Thus, the imposition of the remediation plan and the resulting delay in the plaintiff's completion of the Program was not "by reason of [her] disability," but rather by reason of her poor performance in the Program. *See Frame*, 616 F.3d at 482 (citing *Melton,* 391 F.3d at 671-72). Accordingly, the Court finds that the plaintiff cannot establish a *prima facie* case of disability discrimination and it grants the defendants' motion for summary judgment.

---

[8] Furthermore, "[e]ducational institutions are accorded deference with regard to the level of competency needed for an academic degree." *McGuinness v. Univ. of N.M. School of Med.*, 170 F.3d 974, 979 (10th Cir. 1998) (citing *Doherty v. Southern College of Optometry*, 862 F.2d 570, 575 (6th Cir. 1988)). "An educational institution is not required to accommodate a handicapped individual by eliminating a course requirement which is reasonably necessary to proper use of the degree conferred at the end of a course of study. Waiver of a necessary requirement would have been a substantial rather than merely a reasonable accommodation." *Doherty*, 862 F.2d at 575 (internal citations omitted).

### C. Damages

Even if sovereign immunity did not bar this suit, and even if the plaintiff could make out a *prima facie* case of disability discrimination, she is still not entitled to damages because she has presented no evidence of intentional discrimination or proximate causation. A "plaintiff asserting a private cause of action for violations under the ADA or the [RA] may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002); *see also, Carter v. Orleans Parish Public Schools*, 725 F.2d 261, 264 (5th Cir. 1984) (holding that "the recovery of damages for an educational placement that violates [the RA]" is precluded "unless the misplacement was intentional or manifested some discriminatory animus.").[9]

The defendants have presented evidence that the remediation plan and the resultant delay in the plaintiff's completion of the Program were due to her poor academic performance and the potential risk to patients. There is insufficient evidence that the plaintiff's attending physicians had any discriminatory animus against her based on her disability. *See Carter*, 725 F.2d at 264. Rather, the evidence shows that the Pediatric Education Division Committee determined that the plaintiff needed to complete the remediation plan to satisfy the Program's academic requirements.

Neither has the plaintiff shown that the defendants' actions proximately caused her purported damages. To establish an entitlement to any relief for disability discrimination, a plaintiff must show "a cognizable injury in fact of which the violation is a legal and proximate cause" for damages. *Armstrong*, 141 F.3d at 562; *DeLeon v. City of Alvin Police Department*,

---

[9] Discriminatory intent is necessary because the ADA incorporates the RA's remedies. *See* 42 U.S.C. § 12133. In turn, the RA incorporates the remedies of Title IV of the Civil Rights Act of 1964. *See* 29 U.S.C. § 794(a); 42 U.S.C. § 2000d. Under Title IV, and thus under the ADA, compensatory damages are available only where there is "intentional discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533-34 (1999).

No. H-09-1022, 2010 WL 4942648, at *4 (S.D. Tex. Nov. 30, 2010) ("mere violation of the ADA alone does not establish injury. Rather, a plaintiff is obligated to show, by competent evidence, that a defendant's violation of the ADA proximately caused her actual injury before she can recover."). The plaintiff has made no such showing.[10]

### VI. Conclusion

Based on the foregoing discussion, the Court GRANTS the defendants' motion for summary judgment in its entirety.

It is so **ORDERED**.

SIGNED at Houston, Texas this 21st day of April, 2011.

Kenneth M. Hoyt
United States District Judge

---

[10] *See* n.4, *supra*.